## New Orleans v. Morris.

1. The water-works of a city are not subject to sale for its ordinary debts under execution.

. 2. A city which owned such works conveyed them to a corporation formed for the purpose of maintaining and enlarging them, and received therefor shares of stock, which the statute authorizing the conveyance declared should not be liable to seizure for the debts of the city, but should be reserved for the benefit of the holders of the bonds that had been issued by the city to raise the means wherewith to construct the works. *Held*, that the statute does not, by thus exempting those shares from seizure, impair the obligation of any contract, as they merely represent the city's ownership in the water-works which was, before the enactment of the statute, exempt from seizure and sale.

3. The city may, by a suit in equity, restrain its execution creditors from selling those shares.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. E. Howard McCaleb* for the appellant.

*Mr. William Wirt Howe* and *Mr. John A. Campbell* for the appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a decree, dismissing, on a plea of the defendants, the bill of the city of New Orleans.

The substance of the bill is that the defendants, having several judgments on the law side of the court below, had caused executions to be issued and levied upon shares of the stock of the New Orleans Water-Works Company; that the marshal had advertised and was about to sell them; that prior to March 31, 1877, the city was the sole and absolute owner of the water-works now owned and held by the corporation known as the New Orleans Water-Works Company; and that on that day the legislature of Louisiana enacted a law creating that corporation, with a capital of $2,000,000. Of this sum the corporation, as soon as organized, was to "issue to the city of New Orleans stock to the amount of $606,600, full paid and not subject to assessment, and in addition thereto one similar share for every hundred dollars of water-works bonds which the city

has taken up heretofore and extinguished by payment, exchange, or otherwise; and that the residue of said capital stock shall be reserved for the benefit of all holders of water-works bonds, to the extent of the amount now outstanding, who may elect to avail themselves of the provisions of this act."

The bonds here referred to were issued by the city while sole owner of the water-works, in aid of their construction and extension.

The seventh section of this act reads as follows: " *Be it further enacted*, that the stock owned by the city of New Orleans in said water-works company shall not be liable to seizure for the debts of said city."

It was under this statute, and especially under the section just recited, that the city invoked the restraining power of the court to prevent the sale of its stock in the company.

To this bill the defendants interposed a plea to the effect that, so far as the provision of the statute, exempting the stock of the city in the water-works company from sale under execution, relates to their judgments, it is void by the Constitution of Louisiana and the Constitution of the United States, each of which forbids the enactment of laws impairing the obligation of contracts ; and that the contracts on which their judgments were obtained were made before the passage of the act of 1877.

The court held this plea good, and, as we have already said, refused the injunction, and dismissed the bill.

The first point raised in argument which requires our attention is' that, whether the court below was right or wrong in its decision of the case on its merits, the bill must still be dismissed for want of equity, on the ground that there is an ample remedy at law by a motion to the court to compel the marshal to release his levy, because the stock was not liable to be sold on the execution.

It will be observed that no such objection was made in the court below, and although one of the defendants filed a general demurrer to the bill which might have raised it, he afterwards withdrew his demurrer and joined in the plea on which the case was decided.

This plea was a defence on the merits of the case, and was to be held good or bad on precisely the same principles,

whether pleaded to a declaration at law or a bill in chancery. We should, under such circumstances, have great hesitation to permit the party who, by tendering this issue, had waived the question of the special jurisdiction of the court in equity, to raise that point for the first time on appeal.

We are of opinion, however, that the bill does show on its face a sufficient ground of equitable jurisdiction in its allegations that are sustained by the provisions of the statute, which create a trust in favor of the holders of the old water-works bonds of the city, and of other creditors of the city, which is not shown in any way to have been released or discharged.

Notwithstanding, therefore, the opinion of this court in *Van Norden* v. *Morton* (99 U. S. 378), that in the ordinary case of a wrongful levy of an execution on property not subject to be seized under it, the proper remedy is by motion to have the levy discharged, we think there is in this bill other sufficient grounds for the equitable jurisdiction of the court.

The question to be decided on the merits is, shortly, this: Is a statute of a State legislature which, in the act authorizing a city to convert its ownership of a large and valuable property, held for the use of the public, such as this, into the shares of a joint-stock corporation, declares that these shares shall be exempt from judicial sale for the debts of the city, an impairment of the obligation of existing contracts within the meaning of the Constitution?

The learned counsel, in the oral argument and in the brief, substantially concedes that the water-works themselves, in the hands of the city, were not liable to be sold for the debts of the city. And if no such concession were made, we think it quite clear that these works were of a character which, like the wharves owned by the city, were of such public utility and necessity, that they were held in trust for the use of the citizens. In this respect they were the same as public parks and buildings, and were not liable to sale under execution for ordinary debts against the city.

There is nothing in the nature of this legislation which directly impairs the obligation of the city's contract with the appellees. The courts recognized the binding force of those contracts by rendering judgments against the city after the

passage of the act complained of, just as they would before, and there is no pretence but that the moral or legal obligation of the city to pay those judgments remains undiminished.

The force of the argument for holding the statute void rests on certain decisions of this and other courts in regard to laws which attempted to exempt from the liability to seizure under execution property which, at the time the contract was made, was by law so liable to be seized and sold in enforcement of the contract. The cases of most importance so relied on are *Green* v. *Biddle*, 8 Wheat. 1 ; *Bronson* v. *Kinzie*, 1 How. 311; *Mc Cracken* v. *Hayward*, 2 id. 608.

But these cases do not go so far as the argument in this case requires. Indeed, they fall far short of it. They simply hold that an act of the legislature, passed after a contract is made, which withdraws property then liable to be seized and sold, in enforcement of that contract, from the power of the courts to seize and sell it, impairs the obligation of the contract. But it has never been held, so far as we are advised, that a statute dealing with property *not* subject to sale for enforcement of the contract, cannot, in providing for a change of the form of the title by which the debtor holds it, continue the exemption from forced sale of that which represents in the hands of the same owner the property so exempt. That is the case before us.

The water-works were not liable to execution for judgments against the city. The legislature intended to change the form of the city's ownership of that property into that of shares of the capital stock of a company, of which it was at first to be sole owner. These shares represented the water-works of the city. They represented nothing else. The city owned the shares, and the legislature continued in this property in the hands of the city as shares of stock, the same exemption which belonged to the property represented by these shares. In doing this no right of the creditors, at the time they made their contract or the passage of the act, was impaired. No property to which they then had a right to look for payment of their debt, or as a means of enforcing their contract, has been withdrawn from the force of its obligation. They are placed by this law in no worse condition than they were before.

They were not obstructed or impaired in the exercise of any

remedy which they had when the contract was made. Nothing subject to their debt, — not by way of lien, for such debts created no lien, — but subject to execution after it might be issued,. was withdrawn from that subjection. The shares were evidence of title in property which had never been liable to execution, and the statute continued this exemption in the ownership of these shares so long as it remained in the city.

But it is said that a creditor has, by his contract, the same right to enforce its performance out of property acquired after his debt is created as he had against that which the debtor owned when the contract was made. In a general sense there can be no doubt of the truth of this proposition. But there are two answers to it in the present case. In the first place, the property in question is not other and different property from that held and owned by the city at the time of the contract, and which was then exempt from execution. It has only changed the form and evidence of ownership. The shares represent in the hands of the city the same interest which it had before in the water-works.

In the next place, the city was not situated, as regards this property, as a private person would be in the purchase and acquisition of ordinary property. The city could not have sold this property as the law stood. It could not have put it into a joint-stock company without the aid of a new law. The legislature, in authorizing the change in the form of the ownership of the water-works, could, since it injured nobody and invaded no one's rights, say, as to the city, whether it be called new property or not, that such ownership should continue exempt from execution.

As the city was using no means in acquiring this stock which could have been appropriated under any circumstances to the payment of the debts of appellees, the legislature impaired no obligation of the city in declaring the stock thus acquired exempt from liability for debts.

We are of opinion, therefore, that the plea of defendants was bad.

*Decree reversed, with directions to overrule the plea, and for such further proceedings as are not inconsistent with this opinion.*