No. 12,560.

CITY OF NEW ORLEANS VS. PHILIP WERLEIN.

| 50 1251 |
| 104 496 |

Property once dedicated to public use is *extra commercia* and inalienable by seizure and sale under execution against a municipal corporation, unless it is made affirmatively and clearly to appear that its use had been abandoned or lost by *non-user*.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Samuel L. Gilmore,* City Attorney (*R. A. Tichenor* of Counsel), for Plaintiff, Appellee.

*Edwin T. Merrick* for Defendant, Appellant.

Argued and submitted January 29, 1898.
Opinion handed down November 21, 1898.

The opinion of the court was delivered by

WATKINS, J.   The plaintiff seeks to recover the square of ground in the city of New Orleans which is bounded by Poydras, Carroll, Baronne and Perdido streets, alleging same to be property dedicated to public use, and constituting a portion of the *Place Gravier,* in the

ancient *Faubourg St. Mary*, and not susceptible of alienation, private ownership or private possession—same being *extra commercia*, and exclusively under the power and dominion of the sovereign.

The defendant alleges that said property was adjudicated to Andrew C. Lewis, on the 25th of September, 1878, under an execution which was issued under a money judgment in the suit of John Klein vs. City of New Orleans, No. 7801, in the United States Circuit Court for the State of Louisiana, and that by various *mesne* conveyances the same was transferred to him, and upon which he founds his title and possession thereof. On these issues the case was tried and judgment pronounced in plaintiff's favor, and the defendant has appealed.

In conjunction with his answer the defendant urged pleas of estoppel and *res adjudicata*, predicated upon the suit of the city, in which the marshal's sale was enjoined in the United States Circuit Court, and the judgment thereof rejecting its demands; but same were by the Judge *a quo* overruled, and to his ruling the defendant's counsel retained a bill of exceptions.

This statement of the pleadings suffices to show that it is conclusively admitted by the defendant that the city of New Orleans was possessed of a title to the property in dispute at the time of the marshal's sale to Lewis; and hence the sole question remaining for decision is, whether or not the property was the subject of judicial alienation at that time.

The plaintiff puts its case upon its acquisition of the property as a *locus publicus*, and the title from Gravier dedicating same to public use, and the inalienability thereof on that account; and the contention of the defendant is that the public use of the property had been abandoned by the city many years antecedent to the seizure and sale of Klein, and was consequently the proper subject of a judicial disposition. And to that end all of the defendant's parol proof was directed, though unsuccessfully. The averment of the plaintiff's petition is " that said sale by the United States' marshal to Andrew C. Lewis, was and is absolutely null and void, and that no title or right whatever in and to said property passed by said sale to said Andrew C. Lewis, or to the defendant herein, who claims through *mesne* conveyances from said Andrew C. Lewis.

" That said property is property which was dedicated to public use long prior to the date of said marshal's sale, by Bertrand and

John Gravier, and forms part of the Place Gravier in the Faubourg St. Mary, in this city; and that said property was at the date of said marshal's sale and *has ever* since been, absolutely unsusceptible of alienation, of private ownership, or of private possession, and that said Werlein's possession is illegal and in bad faith.

"Petitioner further avers that she is invested by law with the *administration and possessson for the public benefit* of all property in this city (which is) dedicated to public use, and has the right to sue for the recovery of the possession of, and to establish the title and right of use of the public to any such property."

The prayer of the petition conforms to the foregoing averments.

Counsel for the defendant places reliance chiefly upon his plea of *res adjudicata*, and advances the proposition that, notwithstanding the fact of the inalienable character of the property in suit as a *locus publicus*, same having been *actually adjudicated* at marshal's sale, it has become an accomplished and incontestible fact which can not be again controverted.

We make from counsel's brief the following extract, viz. :

"I am well aware of certain authorities to the effect that property dedicated to public use can not be sold under a judgment; but the court must bear in mind that this property has been already sold under a judgment, and that judgment has never been attacked to this day. To attack it a suit would have to be brought in the court that rendered it. It may be that the judgment was wrong, but it is nevertheless *res jadicata*, unless reversed or annulled.

"This was, also, the judgment of a court of the United States having jurisdiction of the case, and is its action to be disregarded and annulled by your Honors after nearly twenty years of acquiescence? The decisions which say that the title to a *locus publicus* can not be divested mean that it can not be divested *if the proper proceedings are instituted to prevent it.*" (Our italics.)

We do not agree with counsel in that proposition, neither with regard to its application to the facts stated with reference to his plea of *res adjudicata* nor the law governing it.

The facts disclosed by the record are that Klein obtained a *money* judgment against the city of New Orleans in the United States Circuit Court, and thereunder caused an execution to issue, and the property in suit to be seized; and same was subsequently sold to Andrew C. Lewis.

The instant suit attacks the validity of that sale, but does not question the legality of the judgment under and by virtue of which the sale was made.

Admitting that the judgment is and was perfectly valid, and all proceedings thereunder perfectly formal and regular, the suit of the city declares, that the purchaser acquired no title, and none was transferred to the defendanl, for the reason that the property adjudicated was *extra commercia* and inalienable, under the execution of a judgment creditor.

That notwithstanding there was a valid judgment pronounced against the .city for an incontestible debt in favor of Klein, yet the city, as judgment debtor, had no right, title or *private* interest in the property which was the legitimate subject of seizure and sale under execution.

Consequently, the divestiture of the title of the *public* does not, in any manner, depend upon the validity of the judgment or the regularity of the sale thereunder.

Indeed, counsel has altogether misinterpreted the defendant's plea of *res adjudicata* and estoppel, as same is not based upon the money judgment nor the sale thereunder. It is solely predicated upon the decree which was rendered in the *injunction suit* of the city which sought to restrain the sale upon ground different from those now assigned for the illegality of the sale.

The judge *a quo* states the ground of that injunction suit very concisely and we will reproduce same in lieu of a summary of our own, viz.:

" 1. That said Klein had caused his judgment to be registered in the office of the Administrator of Public Accounts, agreeably to the provisions of Act No. 5 of 1870, Extra Session, and had accepted and availed himself of the provision of that act as a means of realizing upon said judgment; and that said act prohibited the issuance of a writ of *fieri facias* upon any judgment so registered, and that said prohibition was binding on Klein.

"2. That Klein was not the owner of the judgment, but had transferred it to Lesassier and Binder.

" 3. That the writ issued for a much larger sum than the balance due on said judgment."

Upon that statement it is quite evident that the city did not resist the execution on the ground that the property seized was not the legitimate subject of sale and inalienable.

Nor is that the defendant's contention; but that it was a defence which was susceptible of having been made in that case, and not having been made, was presumably abandoned, and in consequence thereof, was necessarily covered by said injunction suit and the decree of the United States Circuit Court against the city.

This, as we understand it, is the contention of defendant's counsel; and that is an altogether different proposition from the oue bbove quoted from his brief.

And considering the plea of *res adjudicata* as it is presented in the pleadings, the judge *a quo* said:

" It does not appear to have been suggested in the pleadings that the property seized was a *locus publicus*, end upou the issues as presented, the preliminary injunction was dissolved and complainant's bill dismissed; and the property was accordingly sold by the marshal to A. C. Lewis," etc.

And hence he held, that the demand or cause of action stated in the injunction suit was not the same as that stated in the instant suit, and the plea of *res adjudicata* was rejected.

But taking the contention of the defendant's counsel as stated by him in his brief, viz.: " That it can not be disputed that it is a principle of law universally admitted that it is not only what is set up and shown in a petition that is barred by the plea of *res adjudicata*, but what *might have been* set up and shown," as well, and defendant's situation is not, in our opinion, improved.

The principle contended for is founded on considerations of equity that are held to obtain between private litigants; but we do not think them equally applicable to cases wherein questions of public interest, or those which concern property vested in the public, are at issue, as in the instant case.

On this question our learned brother of the lower court very appropriately observed:

" A different rule is applied by the courts to public corporations than that which is applied to individuals, and particularly is this true with respect to such corporations when acting as administrators or trustees of essentially public rights and public property."

A similar statement of the law was announced by this court in Canal Company vs. City, 44 An. 396, speaking through Mr. Justice Fenner as its organ, viz.:

" Were ordinary litigants and private interests alone concerned,

it would doubtless be too late to obtain relief, but we can not permit the public interests represented by the city of New Orleans to suffer injury by such an inadvertence of counsel. Precedents justify us in extending such protection to municipal corporations with a more liberal allowance than in the case of private litigants. 1 An. 215; 3 An. 230; 4 An. 130, 352; 7 An. 495."

But the decision so much relied upon by defendant's counsel does not go so far as his contention suggests, as will appear from the following extract, viz. :

" So far as the *demand* involved in the action is concerned the judgment has closed all controversy; its validity is no longer open to contestation, whatever might have been said or proved at the trial for or against it.

" The judgment is not only conclusive as to what was actually determined respecting *said demand, but as to every matter which might have been brought forward and determined respecting it.*"

Accepting this statement of the doctrine of *res adjudicata* same is perfectly consistent with the contention of plaintiff's counsel and the opinion of the judge *a quo*, for it is to the effect, only, that the judgment pronounced is absolutely conclusive as to what was actually determined respecting the *demand* of the petition, and also with regard to every other matter which might have been brought forward concerning *said demand.*

But in the city's injunction suit the demand related to the right of Klein to execute his judgment against the city at all, consequently everything which actually appertained to that demand, or might have been therein alleged concerning it, are absolutely concluded by the judgment which was thereon pronounced.

But it did not affect the right of property in the land which had been thereunder seized and sold.

Indeed the judgment was rendered against the city as a municipal corporation as the debtor of Klein, and Klein sought to execute it by the seizure and sale of the property as that of the city; while in point of fact the title had been vested in the *public* by dedication thereof to public use.

And in the pre-ent suit the city appears in the capacity of an administrator or trustee of this public use—a capacity altogether different from that in which it appeared in the injunction suit—and that fact is fatal to the pretensions of the defendant, for the reason

that it is an essential to the maintenance of the plea *res adjudicata* that the parties to the two suits must be not only the same, but that they shall appear in the same identical capacity.

The foregoing deductions necessarily lead to the conclusion that the judge *a quo* correctly rejected and disallowed the defendant's plea of *res adjudicata*.

The plea of estoppel by conduct on the part of city officials in causing the property in question to be assessed and taxes thereon collected as that of property in commerce and in other similar ways must be decided on similar principles.

Our predecessors in dealing with a similar question said, in Municipality No. 2 vs. Orleans Cotton Press, 18 La. 272, viz.:

"These allegations, if proven, would have considerable force, if the plaintiffs sued in the right of a municipality, or if they claimed anything belonging to the corporation; but they only vindicate the right of the public to *loci publici*, things out of commerce and in which the corporation, represented by the plaintiffs, can have no property. The dedication to public use being once established, can not be affected by any act of the municipal officers."

Not only is it a fact which is inferentially admitted by the defendant, that the property in suit was dedicated to public use by Gravier, but that question was expressly decided and forever put at rest by our predecessors in Railroad Company vs. Municipality No. 2, 19 La. 62.

It is unquestionably true that, notwithstanding property has been dedicated to public use, and has thus become consecrated to the public, and thereafter *extra commercia* and inalienable, same may lose that character, by abandonment or *non-user;* but the abandonment or *non-user* must be clearly shown or evidenced by acts and circumstances clearly indicative of such a purpose.

True it is, that the proof does show that certain persons sustaining the relations of tenants and usufructuaries to the city did erect and maintain upon the property in dispute an expensive building, and that the same was used for their private advantage and income; but those persons and others who were permitted to so use the property, went into possession when it was in an untenantable condition, and raised and improved it so that its value as well as its right of occupancy became largely accelerated. But the proof shows that said buildings and improvements were destroyed by fire, and that.

the city urges no claim therefor. There is no proof of abandonment or *non-user*.

On reason and authority we are of opinion that the conclusions of the judge *a quo* are correct.

Judgment affirmed.