ROGERS, J.
 

 Plaintiff brought suit against the defendant town on nine certificates of indebtedness of $492.S2 each, dated February 25, 1914, and made payable on February 25th of each of the years 1915 to 1923, both inclusive, with 6 per
 
 cent,
 
 per annum interest thereon from date until paid, and for recognition of a lien and privilege for material and labor furnished on a waterworks system constructed for said town.
 

 Plaintiff alleges, substantially, that on February 25, 1914, he entered into a contract with the defendant to furnish, labor and material for the construction in said town of a portion of a system of waterworks, consisting of power house, tower, tank, mains, hydrants, meters, and other appurtenances; that the remuneration which he was to receive for furnishing the labor and material for said work was the sum represented by the certificates herein sued on; that he complied with his contract, and the said defendant town, by ordinance adopted on June 29, 1914, accepted his said work, and caused to be issued as prima facie evidence thereof the said certificates, and that he is entitled to be paid the amount called for therein in principal and interest; that he is also entitled to the lien and privilege provided by article 3249 of the Civil Code on said system of waterworks to secure the payment of the debt represented by the certificates.
 

 Plaintiff prayed for judgment recognizing his claim; 'recognizing his privilege as a furnisher and laborer under the article of the Code; ordering the system of waterworks to be seized and sold according to law; and ordering that he be paid out of the proceeds of said sale by preference and priority.
 

 
 *345
 
 Defendant first entered a plea of prematurity, which was overruled. It then filed a plea of prescription of 5 years against the certificates due on February 25, 1915, and on February 25, 1916, which was also overruled. In its answer defendant town recognized the debt of plaintiff on such certificates as were due and not prescribed, but denied the existence of any lien and privilege on its said waterworks system. Defendant prayed that judgment be entered against it in personam only for the amount of such certificates as were due and not prescribed, and that petitioner’s demand for recognition of a lien and privilege and for an order of sale of said waterworks system be rejected.
 

 The case, at the trial, was submitted on the pleadings,' and there was judgment for plaintiff as prayed for. Defendant, after applying for a new trial, which was refused, took the present appeal.
 

 The certificates in question are .made payable out of the surplus revenues of the defendant town for each of the years in which they are to become due; said revenues being pledged and appropriated to the payment thereof.
 

 Counsel for defendant argues that the plea of prematurity is well founded, and should be sustained, because the petition failed to show: (1) an amicable demand for payment; and (2) that there were not suifiT cient funds pledged during the life of the certificates for their punctual payment and that plaintiff had made proper efforts to collect same as they became due.
 

 The argument of counsel cannot prevail.
 

 1. An amicable demand is not necessary previous to bringing a suit. When the basis of an exception, timely filed, is want of amicable démand, the only effect of the plea is to save costs, where the defendant shows a readiness to comply. Phelps v. Coggeshall, 13 La. Ann. 441; Nelligan v. Mussbach, 20 La. Ann. 547.
 

 2. Plaintiff was not required to allege that there were no funds from the surplus revenues pledged for the payment of the certificates. The fact that the debt was to be discharged out of said revenues placed the burden on the defendant of building up the requisite special fund in the town treasury. tq meet its obligations. When the time for payment arrived, the defendant town, as the promisor, should have been the first to act. It was sufficient for plaintiff to allege that he was the holder and owner of the certificates, and that they were unpaid at their respective maturities.
 

 We think the court erred in overruling the plea of prescription interposed by defendant to the certificates maturing February 25, 1915, and February 25, 1916. The prescription pleaded is founded on Rev. Civ. Code, art. 3540, which reads:
 

 “Action on bills of exchange, notes payable to order or bearer, except bank notes, those on all effects negotiable or transferable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable.”
 

 The obligations sued on contain all the elements of a negotiable promissory note. They are unconditional promises by the defendant town to pay plaintiff, “or bearer,” definite sums of money at fixed dates. The additional engagement that the instruments are to be payable out of the surplus revenues of the years in which they are to mature, which are pledged and appropriated for that purpose, does not change their character or legal effect. The stipulation merely indicated a particular fund out of which reimbursement could be made (Act 64, p. 147 of 1904, § 3), and was an accessory obligation by which the revenues in question were to be dedicated to the payment of the instruments, thereby adding to the assurance, or probability, that they would be taken up at their maturities. See Bank' v.
 
 *347
 
 Williams, 21 La. Ann. 121; Littlefield v. Shreveport, 148 La. 693, 87 So. 714.
 

 The legal situation would not be different if the obligations were nonnegotiable. Bank v. Williams, cited supra; Robichaud v. Thorne, 21 La. Ann. 611.
 

 The case of New Orleans v. Warner, 175 U. S. 120, 20 S. Ct. 44, 44 L. Ed. 96, cited on behalf of plaintiff, has no application to the case at bar.
 

 It is argued by the learned counsel for plaintiff that the prescription applicable to the obligations sued on is not 5 years, under Rev. Civ. Code, art. 3540, but 10 years, under Rev. Civ. Code, art. 3544; that the certificates were issued under the terms of Act 32 of 1902, which provides, in section 3, that such instruments shall have no other effect than to furnish prima facie evidence that the contractor has complied with his contract and is entitled to payment therefor; that the basis of plaintiff’s action is his contract; and that the certificates are merely prima facie evidence of the amount due him.
 

 There is nothing in the record to show that the so-called certificates were issued in accordance with the legislative act referred to. It is true such an inference may be drawn from the language in which they are couched. But, conceding this to be the case, they are, nevertheless, merely evidences of debt as are all promissory notes or bills of exchange; and, whatever may have been the nature of the obligation evidenced by the instruments sued on, it is subject to the same prescription as the instruments themselves. Cowand v. Pulley, 11 La. Ann. 1; Perret v. Roussel, 19 La. Ann. 174.
 

 More than 5 years having elapsed between the maturities of the notes falling due on February 25, 1915, and February 25, 1916, and the institution of this suit, without any interruption of prescription being shown, we conclude that the prescription of 5 years is applicable to said instruments.
 

 Passing to the consideration of the merits, we find that the court below recognized the lien and privilege claimed by plaintiff under Civ. Code, art. 3249. This was wrong. It is an almost universal rule of law that there can be no mechanic’s, nor material-man’s, lien acquired nor enforced against or upon the public property of a state or any subdivision thereof. First Nat. Bank v. County of Malheur, 30 Or. 420, 45 P. 781, 35 L. R. A. 141; National Fire Proofing Co. v. Huntington, 81 Conn. 632, 71 A. 911, 20 L. R. A. (N. S.) 261, 129 Am. St. Rep. 228; Hutchinson v. Krueger, 34 Okl. 23, 124 P. 591, 41 L. R. A. (N. S.) 315, Ann. Cas. 1914C, 9S. See, also, numerous cases cited in notes to 35 L. R. A. 142; 20 L. R. A. (N. S.) 261; 41 L. R. A. (N. S.) 315. See 27 Cyc. 25, 26.
 

 The rule is stated in 18 R. C. L. § 9, pp. 881, 882, 883, as follows:
 

 “The authorities are practically unanimous that a mechanic’s hen does not attach to and cannot be enforced against the public property of a state, county, or municipality, acquired and used by and for the benefit of the public. It is obvious that, if a lien could be acquired on public property, such property would, in case of failure to pay the debt be liable to levy and sale, as otherwise the lien .would be of no value. It is clearly against public policy, in the absence of express provisions to the contrary, that the instrumentalities for carrying on the government should be the subject of seizure and sale for debt. Accordingly, the rule denying the right to a lien on public property rests on the principle that the public good requires that property needed for the proper administration of local
 
 government
 
 affairs shall not be taken from the local authorities, lest the due administration, of such affairs be so much disturbed as to cause the public to suffer. * * * The grant by statute of a mechanic’s lien against ‘all buildings’ does not include public buildings, as they are not by express
 
 terms
 
 of the statute included within its operation. And so, under the usual lien statutes, no lien can be acquired against a court house, a county jail, a state university, a public schoolhouse, a library building, a county hall of records, a public bridge, a fire bell tower belonging
 
 to
 
 a
 
 *349
 
 municipal corporation, a tunnel constructed by a municipality, a
 
 municipal water plant,
 
 a levee, a monument in a public park, or a state lunatic asylum. * * * ” (Writer’s italics.)
 

 Some of the Louisiana cases holding that public property is exempt from seizure and sale under execution are as follows, viz.: Police Jury v. Foulhouze, 30 La. Ann. 64, courthouse and jail; State v. Finlay, 33 La. Ann. 113, charity hospital; Tulane, etc., v. Board of Assessors, 38 La. Ann. 298; City of New Orleans v. Werlein, 50 La. Ann. 1251, 24 So. 232; Barret v. Board of Com’rs, 133 La. 1022, 63 So. 505, 50 L. R. A. (N. S.) 469; New Orleans v. Morris, 105 U. S. 600, 26 L. Ed. 1184.
 

 In Barret v. Board of Com’rs, this court held that the mechanics’ lien law did not apply to publicly owned wharves and sheds. In New Orleans v. Morris it was stated that a municipally owned waterworks plant could not be seized and sold for a debt due by the municipality. And in Wilkinson v. Hoffman, 61 Wis. 637, 21 N. W. 816, it was expressly decided that a statute, authorizing a mechanic’s lien did not extend to a building or machinery placed in a building, constituting a part of the waterworks of a municipal corporation. In this case the court said (referring to the statute invoked in behalf of the lienor)’:
 

 “The considerations founded on grounds of public policy and regard for the objects of municipal government forbid that this clause should be held to apply to machinery placed in a building constituting a part of the city waterworks, as strongly as to exempt the building itself. The public inconvenience which would result from having such machinery removed is too obvious and grave to require any discussion. The comfort, health, safety, and property of the citizens would be greatly endangered by allowing the facilities for procuring water to be suspended, even for a short period.”
 

 The legal principle governing all of these cases is that the title to such property is held in trust - for ■ the public, and therefore can no more be sold to satisfy the debts of a state or other political subdivision than can any other trust property be sold to satisfy the debts of any other trustee..
 

 Almost the only exception to the line of ; jurisprudence to which we have referred is to be found in the decisions of the Supreme Court of Kansas, and in one case (McKnight v. Grant Parish, 30 La. Ann. 361, 31 Am. Rep. 226) decided by this court in the year 1878.
 

 In Barret v. Board of Com’rs, referred to supra, the McKnight Case was considered, but the court refused to follow it because it found that it was based, mainly, on strong equitable grounds.
 

 The McKnight Case is one of the many illustrations that “hard cases make bad law.” We think, however, the court might have gone further in its analysis of the opinion, when we are confident it would have reached the conclusion that there was no legal basis on which to rest the decision. The case involved the application of Civ. Code, art. 3249, to the facts presented. The codal article gives the lien upon the building and upon the lot of ground on which it was erected, provided the lot belongs to the person having the building erected. The court seemed to find some distinction between the character of the ownership of the jail building and of the jail lot; and, while it readily recognized that the jail lot could not be sold for debt, it held that the jail building might be sold to pay for the cost of its erection. This conclusion was reached, seemingly, because the codal article provides that, if the buildings are erected by a lessee, the privilege exists ¿gainst the lessee only and not against the owner.
 

 With all due respect to our able predecessors, we find ourselves unable to follow their reasoning. The law grants the lien on the building and the lot, if both belong to the same owner. In the case under discussion the parish of Grant was the owner of the
 
 *351
 
 jail lot, admittedly not seizable for debt, and it was also the owner of the jail building. If the lot could not be levied against and sold, the building, likewise, was exempt from seizure and sale. Both lot and building were used for public purposes, and were extra commereia, inalienable by seizure and sale under execution against the parochial authorities.
 

 In consonance with the views which we have herein expressed, in order to entirely harmonize our jurisprudence with that of our sister states, and to. the end that there may no longer be an irreconcilable conflict among our own decisions on the point, we have concluded that the McKnight Case should be overruled-, and we do now so expressly declare and order.
 

 Evidently realizing the necessity of protecting persons performing labor and furnishing materials for public work, the state Legislature in the year 1918 enacted Act 224 for that purpose. This act provides that in all such contracts over $500 a bond must be secured by the govermental authority having the work done under penalty of personal liability. While the statute -also provides for the recordation of claims, such recordation, apparently, is merely for the puipose of giving notice to the public and not to create any lien or privilege in favor of the claimant.
 

 It is our conclusion that plaintiff is entitled to judgment in personam only for the amount of the obligations sued on which have not become prescribed.
 

 Eor the reasons assigned, the judgment appealed from is annulled in so far as it recognizes the lien and privilege claimed by plaintiff against and upon the waterworks system of the defendant town, and orders the seizure and sale of said waterworks system, and priority payment to satisfy plaintiff’s debts.
 

 It is further ordered that the said judgment be amended by reducing the amount of the principal thereof from $4,435.38 to $3,-449.74.
 

 It is further ordered that in all other respects the said judgment be affirmed; defendant to pay the costs of the court below; plaintiff to pay the costs of appeal.